16 December 26, 2024 No. 922

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS ALAN DAVIS, JR.,
*Defendant-Appellant.*

Washington County Circuit Court
C131383CR; A169891

On remand from the Oregon Supreme Court, *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024).

James Lee Fun, Jr., Judge.

Submitted on remand August 21, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

## TOOKEY, P. J.

In our opinion addressing defendant's second appeal of his convictions for one count of first-degree kidnapping, ORS 163.235 (Count 1); one count of attempted first-degree sexual abuse, ORS 163.427, ORS 161.405 (Count 2); and one count of fourth-degree assault, ORS 163.160 (Count 3), we reversed and remanded defendant's convictions after determining that the trial court had abused its discretion in failing to exclude evidence of other bad acts under OEC 403, because the danger of unfair prejudice resulting from the admission of the evidence substantially outweighed the probative value of the evidence. *State v. Davis*, 319 Or App 737, 511 P3d 10 (2022). On the state's appeal, the Supreme Court reversed our decision, *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024), and has now remanded the case to us to consider defendant's third assignment of error, challenging his presumptive life sentence under ORS 137.719, which we did not reach previously because of our reversal of defendant's convictions. *State v. Davis*, 290 Or App 244, 262 n 6, 414 P3d 887 (2018). For the reasons explained here, we reject defendant's third assignment of error and therefore affirm.

Because defendant's conviction of attempted first-degree sexual abuse was his third conviction for a felony sex offense, ORS 137.719(1) required that he be sentenced to a presumptive sentence of life in prison without the possibility of parole.[1] In his third assignment of error, defendant argues that, as applied to him, the statutory presumptive life sentence without the possibility of parole is unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution.[2]

---

[1]  ORS 137.719(1) provides:

 "The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence."

[2]  Defendant concedes that, below, he did not expressly cite Article I, section 16, of the Oregon Constitution. However, given his argument that the sentence would be disproportionate, and the consideration of that argument by the trial court—including its discussion of opinions of the Supreme Court—we conclude that the purposes of preservation were adequately met. *See State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (focusing on meeting purposes of preservation);

Whether a sentence is unconstitutionally disproportionate is a question of law. *State v. Ryan*, 361 Or 602, 612, 396 P3d 867 (2017) (addressing analytical framework). We address first defendant's argument that his sentence is unconstitutionally disproportionate under Article I, section 16, which provides that "all penalties shall be proportioned to the offense." A statutorily required sentence violates Article I, section 16, as applied, if it is "so disproportionate, when compared to the offense, as to 'shock the moral sense' of reasonable people." *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009) (quoting *State v. Wheeler*, 343 Or 652, 670, 175 P3d 438 (2007)). It is rare that the standard is met. *Id*.

In assessing whether a punishment is unconstitutionally disproportionate, the court considers at least three factors:

"(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."

*Rodriguez/Buck*, 347 Or at 58. Under the first *Rodriguez/ Buck* factor, the court considers the relationship between the gravity of the crime and the severity of the penalty imposed. It is a basic proportionality concept that "more serious crimes should receive more serious sentences than less serious crimes and vice versa." *Id*. at 61. Under the second *Rodriguez/Buck* factor, the court compares the penalty imposed with penalties for related offenses. *Id*. at 63. "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id*. Under the third *Rodriguez/Buck* factor, the court considers the defendant's criminal history, which includes his convictions as well as misconduct that did not result in conviction. *Id*. at 65.

When a sentence is enhanced by operation of ORS 137.719 because of a defendant's repeat-offender status, additional considerations come into play. "The idea that a penalty that might be proportional as applied to one who has previously

---

*State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (whether the defendant correctly identifies the source for his position is "less crucial" for preservation than raising the issue).

committed the same or other crimes but not proportional as applied to a first-time offender is rooted in Blackstone's influential writings on proportionality." *Rodriguez/Buck*, 347 Or at 65-66; *see also Wheeler*, 343 Or at 671 ("[T]he proportionality provision permits the imposition of penalties for repeat offenders that might not be permissible for a single offense."). In that context, the first and third *Rodriguez/Buck* factors will, "in large part, coalesce." *State v. Althouse*, 359 Or 668, 686, 375 P3d 475 (2016). A comparison of the severity of the penalty and the gravity of the crimes that are subject to that penalty under a repeat-offender statute focuses not on the last offense committed but on the gravity of the defendant's criminal history. *Id*. The court "consider[s] the specific circumstances of the charged and uncharged offenses that make up [the defendant's] criminal history," as well as the "'seriousness of [the defendant's] repetitive sexual conduct,'" and "'the danger that it forecasts for others unless the defendant is segregated from society.'" *Id*. (quoting *Jensen v. Gladden*, 231 Or 141, 144-45, 372 P3d 183 (1962)). The constitutionality of an enhanced sentence for repeated sexual offenses "'depend[s] on the seriousness of repetitive sexual conduct of th[e] kind [punished by the statute] and the danger that it forecasts for others unless the defendant is segregated from society.'" *Althouse*, 359 Or at 685. If the defendant "'is a menace to the community, his sentence should be aimed at offering the most protection to the community, regardless of the relative innocuousness of the particular crime for which he is now convicted.'" *Id*. at 684 (quoting *Tuel v. Gladden*, 234 Or 1, 6, 379 P2d 553 (1963)). "Because the legislature has primary authority to determine the gravity of an offense and the appropriate length of punishment, a court may say that a particular punishment is constitutionally disproportionate only in those rare circumstances where the legislature has exceeded that authority." *State v. Delp*, 297 Or App 1, 8, 441 P3d 590 (2019) (internal quotation marks omitted).

   *Gravity of defendant's crime of conviction and criminal history compared to the severity of the penalty.*

   We have considered together the first and third *Rodriguez/Buck* factors—the gravity of defendant's crime of conviction and criminal history compared to the severity of

penalty. It would not benefit the parties, the bench, or the bar to describe in detail the gravity of defendant's crimes, his criminal history, and his failure to reform his conduct. The trial court cited the "implied violence" in much of defendant's past conduct as well defendant's inability to reform his conduct. Suffice it to say that the first and third factors as they bear on proportionality persuade us that the presumptive life sentence required by ORS 137.719 is not disproportionate to defendant's crime of conviction and criminal history.

　　　　*Comparison of defendant's penalty with penalties imposed for similar crimes.*

　　　　Under the second *Rodriguez/Buck* factor, the court compares the penalty imposed on the defendant with penalties for related offenses. 347 Or at 63. "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." *Id*. The "[c]rimes that are relevant to [the related-crimes] analysis include other offenses designated as 'sex crimes' that are subject to enhanced sentences under ORS 137.719(1), as well as the offenses identified as sexual offenses in ORS chapter 163." *State v. Sokell*, 360 Or 392, 398-99, 380 P3d 975 (2016).

　　　　Defendant contends that there are recidivist sexual offenses that, in his view, are as serious as or more serious than defendant's offenses, including unlawful contact with a child, ORS 163.479, a Class C felony, and unlawfully being in a location where children regularly congregate, a Class A misdemeanor, ORS 163.476, that are not considered to be "sex crimes" and that, therefore, are not subject to ORS 137.719, suggesting that defendant's sentence is disproportionate. The Supreme Court rejected a similar argument in *Althouse*, 359 Or at 691-92 ("If, as explained above, defendant's sentence is constitutionally proportionate as applied to his criminal history, it is difficult to see how it advances his as-applied challenge to his sentence to argue that the legislature also could have imposed a life sentence on others who commit additional sex crimes.").

　　　　And, once again, in the context of a sentence that is required by a repeat-offender statute, considerations here

are not simply a matter of comparing defendant's sentence to the sentences for other sexual offenses. Where, as here, the court has concluded under the first and third *Rodriguez/Buck* factors that the sentence is not disproportionate to the defendant's criminal history, the comparison required by the second factor is of minimal additional weight. *Althouse*, 359 Or at 692 ("When, as explained above, defendant's sentence appears proportionate to his particular criminal history, the comparisons that defendant invites us to make provide no reason to hold that a life sentence, as applied to him, is disproportionate in violation of Article I, section 16."). Defendant's arguments under the second *Rodriguez/Buck* factor do not undermine our conclusion under the first and third factors that defendant's sentence is not disproportionate to his particular criminal history. *Id*.

### *Defendant's Eighth Amendment Challenge*

We move on to defendant's contention that the presumptive sentence under ORS 137.719(1), as applied to him, violates the Eighth Amendment's prohibition against cruel and unusual punishment. The disproportionality analysis under the Eighth Amendment in the context of a recidivist sentence is similar to that under the Oregon Constitution. *See Althouse*, 359 Or at 692-93 (applying analysis). The same factors that lead us to conclude that defendant's sentence complies with the Oregon Constitution require the conclusion that it complies with the federal constitution.

Having reviewed the facts of this case and defendant's criminal history, and having considered the arguments raised on appeal, we conclude that, although defendant's sentence is harsh, this is not one of "those rare instances" in which the enhanced sentence that the legislature authorized for a repeat offender is constitutionally disproportionate.

Affirmed.